# Commonwealth *v.* People's Passenger Railway Company, Appellant.

*Taxation—Corporations—Tax on loans—Unknown holders of loans—Duty of treasurer of corporation.*

It is the duty of the treasurer of a corporation in making a return for a tax on loans to show affirmatively that he has used the utmost diligence in endeavoring to ascertain the residence of the holders of the loans, and if he fails to do so and returns a large number of loans as being held by persons whose residence is unknown, the corporation will be liable for his negligence, and will be charged with the tax on the loans.

Argued June 1, 1897. Appeal, No. 17, May T., 1897, by defendant, from judgment of C. P. Dauphin Co., Commonwealth Docket, 1896, No. 870, on trial by court without a jury. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Appeal from tax settlement.

McPHERSON, J., filed the following opinion:

This case was tried without a jury under the provisions of the act of 1874. We find the facts to be as follows:

1. The defendant is a domestic corporation. During the year 1895 its indebtedness was $750,000, evidenced by three series of bonds, each series being secured by a separate mortgage.

2. Of this amount $10,000 was held and owned by a corporation of Pennsylvania paying tax upon its capital stock; $278,000 was held by domestic corporations as trustees, agents or attorneys in fact, or by individual residents of Pennsylvania either as agents or trustees or in their own right; $17,000 was held by nonresidents and $447,000 was held by persons concerning whose residence defendant's treasurer reported that it could not be ascertained after diligent and careful inquiry. Of the last mentioned item $67,000 was held in 1895 by domestic corporations as trustees or by domestic corporations having no capital stock and paying no tax upon capital stock.

3. The defendant's bonds are all coupon bonds, the coupons being payable to bearer. Interest coupons are ordinarily pre-

VOL. CLXXXIII—23

sented by the messengers of banks, brokers and other collecting agencies, who rarely know, or refuse to disclose, the names of the owners of the bonds or coupons.

4. Concerning the diligence of the defendant's treasurer, the testimony is vague and unsatisfactory. It has failed to convince us that the proper search was made after the owners of the bonds. The treasurer does not state the facts from which he draws the following important inferences: that he "made every possible effort to ascertain the residence of the holders;" that "the most thorough investigation possible . . . . has failed to disclose the ownership of the bonds . . . . further than is above shown;" and that he has "no means of knowledge" that any other bonds than those reported were held in Pennsylvania. It does not help the matter to add with like vagueness that "the sources from which coupons were received would seem to indicate that the bonds, the ownership of which could not be ascertained as above shown, were wholly outside of the state." In a word, the treasurer gives his figures in lump sums, without schedules of persons and items, does not state how he obtained the information upon which he acted, fails to specify what that information was, and draws his own conclusion (which we are asked to accept without the means of verifying its accuracy) that his investigation has been "the most thorough investigation possible" and that he has made "every possible effort."

Obviously such an inference is equivalent to a decision of the point in controversy, and this is not within his province. It is his duty to detail the various steps he has taken; and thereupon it becomes the duty of the court to decide whether he has made diligent inquiry. A treasurer's report may in itself furnish sufficient evidence of diligence, but from some source the court must learn what he has done before it is possible to draw the inference that he has discharged his full duty. From the evidence now offered we cannot avoid the finding that the defendant's treasurer did not use due diligence and care in making inquiry during the year in question. Accordingly the company is liable for his default.

### CONCLUSION OF LAW.

The commonwealth is entitled to recover as follows:

| Principal, four mills on $723,000, | . | . | $2,892 00 |
| Less treasurer's commission, . | . | . | . | 144 60 |
| Balance, | . | . | . | . | $2,747 40 |

Interest at 12 per cent., from October 30, 1896,
to March 30, 1897, . . . . . 137 38
Attorney General's commission, . . . 137 38

Total, . . . . $3,022 16

Defendant's exceptions alleged that the court erred as follows :

1. In not finding as a fact that in the blank form prescribed by the auditor general defendant's treasurer did, for the year 1895, make to the auditor general the following report and accompanying schedules, viz : .

### "REPORT OF LOANS, VIZ :

"Scrip, bonds, mortgages, promissory notes, bills, judgments, certificates or other evidences of indebtedness, issued or assumed by the People's Passenger Railway Company for the year ended December 31st, 1895.

"Address of company—PHILADELPHIA, PENNA.,

"Date—November 4, 1895.

"To the Auditor General of Pennsylvania :

"In accordance with the provisions of the fourth section of the act of June 30, 1885, and the first section of the act of June 8, 1891, and the requirements of your department, I make, as treasurer of the above-named corporation, the following report of the indebtedness of said company for the year 1895, and I do also hereby assess each and every of the scrip, bonds and other evidences of its indebtedness at its nominal value, and report the amount of indebtedness of the corporation owned by residents of the commonwealth and others, as nearly as the same can be ascertained, as follows :

Nominal par value of all scrip, bonds, mortgages, promissory notes (except notes discounted or negotiated by banks or savings institutions), penal or single bills, judgments or other evidences of indebtedness held or possessed by any person, persons, co-partnership, unincorporated association, company, joint stock asso-

ciation or company, limited partnership, bank or corporation, in his, her, their or its own right or as active trustee, agent, attorney in fact, or in any other capacity, for the use, benefit or advantage of any other person, association, partnership, company or corporation.

| | |
|---|---|
| Total indebtedness . . . . | $750,000.00 |

Nominal par value of said indebtedness owned by non-residents of Pennsylvania, . .

Nominal par value of said indebtedness held, owned or possessed by individual residents of Pennsylvania, or by any co-partnership, unincorporated association, company, joint stock association or company, limited partnership, bank or corporation, in their own right,

Held, owned or possessed by them as trustee, agent, attorney in fact or in any other capacity, . . . . . . . :

See schedule of loans hereto attached.

(Signed) . " D. C. GOLDEN,
"Treasurer.

" STATE OF PENNSYLVANIA, } ss :
" COUNTY OF PHILADELPHIA. }

" On this seventeenth day of December, A. D. 1895, personally appeared before me, a notary public in and for the county aforesaid, D. C. Golden, treasurer of the said company, who, being duly sworn according to law, did depose and say that the foregoing report and the attached schedule of indebtedness, with the amounts owned by residents and non-residents of Pennsylvania, respectively, as nearly as the same can be ascertained, after diligent inquiry having been made, is correct and true.

(Signed) " D. C. GOLDEN,
"Treasurer.

" Sworn and subcribed before me the day and year last aforesaid.

[SEAL.] " WM. F. BOYD,
"Notary Public."

Schedule of Loans or Indebtedness, viz: scrip, bonds, mortgages, notes, bills, judgments, or other evidences of Indebtedness issued or assumed by the People's Passenger Railway Company during the year 1895.

| Description of loan or indebtedness. | Total amount of indebtedness. | Amount thereof held and owned by corporations of Pennsylvania, in their own right,* including loans held by national banks. | Amount thereof held by domestic corporations as trustees, agents or Attorneys in fact, or by individual residents of Pennsylvania, whether as agents or trustees, or in their own right. | Amount thereof held by state banks or savings institutions, not including those held by national banks. | Amount owned by non-residents. | Amount thereof held or owned by persons whose residence cannot be ascertained after diligent and careful inquiry. | Date of issue of loans. | Rate interest. | Interest, if any, paid during tax year. If none paid, so state. | Date of payment or satisfaction of loan. |
|---|---|---|---|---|---|---|---|---|---|---|
| 1st mtge. 7 per ct. bonds. | 219,000 | 10,000 | 194,000† 192,000‡ | None | 15,000† 17,000‡ | None 237,000† | .... | 7% | whole year. whole year. | |
| 1st mtge. 5 per ct. bonds. | 285,000 | None | 48,000† 33,000‡ | None | None | 252,000‡ 214,000‖ | .... | 5% | whole year. whole year. | |
| Con. mtge. 5 pr. ct. bonds. | 246,000 | None | 32,000‖ 36,000§ | None | None | 210,000§ | .... | 5% | whole year. whole year. | |
| Discounted or negotiated by banks. | | | | | | | | | | |
| Other notes bearing interest. | | | | | | | | | | |
| Other notes not bearing interest. | | | | | | | | | | |
| Miscellaneous. | | | | | | | | | | |

The company's bonds are all coupon bonds, and the coupons representing the interest upon those reported herein as held or owned by persons of unknown residence were presented for payment by banks, brokers and other collection agencies through their messengers who either did not know or refused to disclose the names of the owners of the bonds.

*See detailed statement of loans held by corporations of Pennsylvania.
†At date of interest payment 1 | 15 | 95.   ‡ At date of interest payment 7 | 15 | 95.
‡At date of interest payment 7 | 15 | 95.   § At date of interest payment 9 | 1 | 95.
‖At date of interest payment 3 | 1 | 95.

NOTE.—Be particular to state in the appropriate column whether or not any interest has been paid on the different loans during the year 1895.

*Schedule of Loans and Indebtedness held, owned and possessed by Corporations of Pennsylvania, issued or assumed by the People's Passenger Railway Company during the year 1895.*

| Description of loan or indebtedness. | Amount held by corporations. | Names of corporations holding same. | Location. | Remarks. (*Here state whether held in its own right or as trustee, agent or attorney in fact, or in any other capacity.*) |
|---|---|---|---|---|
| 1st mtge. 7 per ct. bonds. | 10,000 | Spring Garden Fire Ins. Co. | Phila........ | Own right. |

NOTE. — Where loans are held by institutions of purely public charity, a statement that the institutions holding them *are* purely public charities should follow the entry of their names and the amount of loans held by them.

2. In not finding the facts set forth in the undisputed affidavit of D. C. Golden, defendant's treasurer, which was admitted in evidence without exception, as follows:

I am the treasurer of the People's Passenger Railway Company and was such treasurer in 1895. The bonded indebtedness of the said company during said year was $750,000, as reported by me to the auditor general, November 4, 1895, consisting of three separate loans as follows, viz:

| | |
|---|---:|
| First mortgage, five per cent bonds, . . | $285,000 |
| First mortgage, seven per cent bonds, . | 219,000 |
| Consolidated mortgage, five per cent bonds, . | 246,000 |

I made every possible effort to ascertain the residence of the holders of these bonds in the year 1895 with the following result:

Interest upon the first mortgage, seven per cent bonds is payable January 15 and July 15 in each year. At the payment of interest due January 15, 1895, $10,000 of these bonds were held by the Spring Garden Fire Insurance Company, a corporation of the state of Pennsylvania paying tax upon its capital stock; $194,000 were held by individual residents of Pennsylvania or by corporations or others in trust; $15,000 were held by nonresidents of Pennsylvania.

At the payment of the July interest $10,000 were held by the Spring Garden Insurance Company, $192,000 by residents of Pennsylvania, and $17,000 by nonresidents.

The interest upon the first mortgage, five per cent bonds, $285,000, is also payable January 15 and July 15. At the date of the January payment of interest $48,000 were held by individual residents of Pennsylvania, or by corporations in trust, and $237,000 by persons whose residence could not be ascertained. At the payment of the July interest $33,000 were held by individual residents of Pennsylvania, or by corporations in trust, and $252,000 by persons whose residence could not be ascertained.

Upon the consolidated mortgage, five per cent bonds, $246,000, interest is payable March and September. At the payment of interest March 1, 1895, $32,000 of these bonds were held by individual residents of Pennsylvania, or by corporations in trust, and $214,000 by persons whose residence could not be

ascertained.   At the payment of September interest $36,000 were held by residents of Pennsylvania, or by corporations in trust, and $210,000 by persons whose residence could not be ascertained.

The company's bonds are all coupon bonds, the coupons being negotiable and payable to bearer.   Coupons representing the interest upon those bonds mentioned above as held or owned by persons whose residence could not be ascertained were presented by banks, brokers and other collection agencies through their messengers, who either did not know or refused to disclose the names of the owners of the bonds from which the said coupons had been detached.   The most thorough investigation possible for me to make has failed to disclose the ownership of the bonds of the company in 1895 further than is above shown.

I have no knowledge, or means of knowledge, that any other than the bonds above reported are, or were in 1895, held or owned by residents of Pennsylvania, or by corporations of Pennsylvania or others in trust.   The sources from which the coupons were received would seem to indicate that the bonds, the ownership of which could not be ascertained as above shown, were wholly outside of the state.

3. In its fourth finding of facts.

4. The learned court erred in not finding as a conclusion of law that the report, and the schedules which form part thereof, having been made by defendant's treasurer, the officer designated by the fourth section of the act of June 30, 1885, under oath, must be presumed to be correct in the absence of proof to the contrary.

5. In not sustaining the first objection specified in defendant's appeal, said objection being as follows, viz :

" In the settlement of account hereby appealed from, tax to the amount of $1,890,000 is charged upon $472,500 of bonds, none of which are known, or can be ascertained to be held, or to have been held or owned, at any time during the year 1895 by residents of Pennsylvania.   The state cannot lawfully impose a tax upon property, persons or business not within her jurisdiction.   The acts of June 30, 1885, June 1, 1889, and June 8, 1891, cannot, nor can either or any of them, be construed to require the company, or the treasurer thereof, to retain a tax from interest paid upon bonds, save such only as are held by residents of Pennsylvania ;

or if they can, they are void because in conflict with section 10 of article I., of the constitution of the United States as impairing the obligation of contracts. And the state of Pennsylvania, having forced, or attempted to force, upon the company appellant an obligation to act as tax collector not provided for in its charter, cannot, in any event, hold the company responsible for failure to collect a tax upon bonds until it shall be shown that said bonds are taxable by reason of their ownership within the state."

6. In not sustaining the eighth objection specified in defendant's appeal, said objection being as follows, viz:

All the indebtedness of the corporation appellant is evidenced by bonds which have attached to them coupons representing the interest from time to time accruing, which coupons are payable to bearer, and are detachable from all said bonds and are separate and distinct contracts possessing all the attributes of commercial paper, the title to which passes by delivery, and the same may be owned, and often are owned, when presented for payment, by persons other than those who own the bonds to which they were originally attached; and if the act of June 30, 1885, the act of June 1, 1889, or the act of June 8, 1891, requires the company to withhold from persons owning and presenting the coupons a tax due upon bonds owned by other persons, then the said act impairs the obligation of the contract between the company and the owner of the coupon, and is in conflict with section 10 of article I. of the constitution of the United States and is, therefore, void.

7. In its conclusion of law as follows, viz:

The commonwealth is entitled to recover as follows:

| | |
|---|---|
| Principal, four mills on $723,000,   .   .   . | $2,892 00 |
| Less treasurer's commission, .   .   .   . | 144 60 |
| Balance,   .   .   .   .   .   .   . | $2,747 40 |
| Interest at 12 per cent from October 30, 1896, to | |
| March 30, 1897, .   .   .   .   .   . | 137 38 |
| Attorney general's commission,     .   .   . | 137 38 |
| Total,   .   .   .   .   .   .   . | $3,022 16 |

8. In not finding that the defendant company, having upon a similar report and similar testimony been held by this Court

to be not liable for a tax on bonds held by persons of unknown residence for the year 1890, in Com. v. People's Passenger Railway Co., No. 386, September term, 1891, in Dauphin common pleas, cannot reasonably be expected to make a different report for 1895, or to detail at greater length the steps taken by defendant, or its treasurer, to ascertain the residence of the bondholders in 1895.

9. In not finding as a conclusion of law that, defendant's treasurer having reported to the auditor general under oath for the year 1895 that the amount of defendant's indebtedness " owned by residents and nonresidents of Pennsylvania, respectively, as nearly as the same can be ascertained after diligent inquiry having been made," and also the "amount thereof held or owned by persons whose residence cannot be ascertained after diligent and careful inquiry," defendant is, in the absence of proof to the contrary, entitled to the presumption of law that said report is correct and that diligent and careful inquiry was made.

10. In not directing judgment to be entered in favor of defendant.

The court filed the following opinion on defendant's exceptions:

In answer to the first exception, we find the facts to be as therein stated, namely: the defendant's treasurer did make the report as specified.

The remaining exceptions must be overruled, but a few words may be said as to the eighth, fourth and ninth. The eighth exception rests upon an averment of fact that was not supported by any evidence at the trial, and for this sufficient reason cannot now be considered. The fourth and ninth exceptions raise a question of importance. The report made by the defendant's treasurer contains an averment that the amount of the company's indebtedness "owned by residents and nonresidents of Pennsylvania respectively, as nearly as the same can be ascertained after diligent inquiry having been made," has been correctly returned; and a further averment, that the "amount thereof held or owned by persons whose residence cannot be ascertained after diligent and careful inquiry" is also correctly stated. These are the formal averments of every report on this subject made to the auditor general, and therefore the question now raised is in the interest of every domestic corporation collecting

the tax upon corporate loans. The defendant argues that these averments are prima facie true, and cast upon the commonwealth the burden of proving that the duties imposed upon the treasurer have not been fulfilled. We do not agree with this position. For the purposes of this tax, the treasurer of the corporation is not an independent official, but the agent of the commonwealth, required by statute to undertake a special service. His duties are clearly defined; he must assess the tax upon corporate loans against resident owners, and collect it from persons liable to pay; and he must also report annually to the auditor general how much of the corporate indebtedness is owned by residents of Pennsylvania as nearly as the same can be ascertained. In making this report, which requires him to make a proper effort to ascertain who the bondholders are and where they reside, he is in the position of any other agent making report to his principal. It is not within the power of such an agent to sit in judgment upon his own conduct, and decide either finally or provisionally that he has fulfilled his duty. He may report in these terms if he chooses or is required so to do; but if the principal is not satisfied, his right to call for a detailed account of the agent's conduct cannot be doubted. It is true that a public officer—assuming the treasurer to be a public officer—is presumed to do his duty; but this presumption is usually applied when his conduct is questioned by some other person than his superior. Generally, it does not apply when the superior is scrutinizing his subordinate's report. To allow it to prevail in such a situation would reverse the relation of the parties and make the subordinate the temporary superior. For the time at least, he would thus be relieved of any liability to account and would be bound to offer explanation only after his superior had made some attempt to prove the negative averment, that he had not fulfilled his duty.

Moreover, according to a well known rule of evidence, where the subject-matter of a negative averment lies peculiarly within the knowledge of one party, the burden lies upon him to disprove it, although under ordinary circumstances, the burden of proof might be upon his antagonist: 1 Greenleaf on Evid. (13th ed.) sec. 79. The reason of the rule applies to the case in hand. Here, and in all similar controversies, unless the commonwealth calls the treasurer as a witness, it is a very difficult

task to discover whether proper diligence has been exercised. The kind and degree of effort made by the treasurer to discover the residence of the bondholders, the examination he may have made of the corporate records and correspondence, the use made of other sources of information that may be open to him—in short, all the details of his conduct—lie peculiarly within his own knowledge, and therefore, should be disclosed by his own lips. He should describe with sufficient minuteness what he has done; but he may not draw an inference in his own favor from undisclosed facts, and treat it as evidence that requires the commonwealth to rebut it.

This particular question has not yet been decided in Pennsylvania, but for years we have been acting in the opposite sense. It has always been the practice in this court to require from the treasurer not only the formal report made upon the blank furnished by the department, but also affirmative testimony concerning the manner in which he has discharged the duty imposed by law. Believing this practice to be correct, because warranted by the statute and by legal principles, we decline to adopt the position urged upon us by the two exceptions now under consideration.

The exceptions are overruled, and judgment is directed to be entered in accordance with the opinion previously filed.

*Error assigned* was in overruling exceptions to the opinion of the court.

*M. E. Olmsted,* for appellant.—The treasurer of the defendant company has faithfully performed the duties imposed upon him by statute, according to the interpretation of the court below, and has made the report in the exact language of the learned judge, which is also the act of assembly; that is to say, has reported the corporate indebtedness owned by residents of Pennsylvania " as nearly as the same can be ascertained." But having made this report, it is not made by law the duty of the treasurer of the corporation to follow it up with evidence to prove that it is correct. Until the contrary is proved the legal presumption is that it is correct: Com. v. Lehigh Valley R. R., 37 Leg. Int. 407; Com. v. Phila. & Read. R. R. Co., 145 Pa. 74; Com. v. P., Ft. W. & C. Ry., 74 Pa. 83; Com. v. Lehigh

Valley R. R. Co., 104 Pa. 89; P. & A. Tel. Co. v. Com., 3 Brewster, 517; Phila. v. Com., 52 Pa. 451; Com. v. Hays, 1 Pitts. 316; Speck v. Com., 3 W. & S. 324; Del. & Hudson Canal Co. v. Walsh, 33 Leg. Int. 349; New Orleans v. Louisiana Savings Bank, 31 La. Ann. 828; Com. v. Haines, 97 Pa. 229; Com. v. Erie & Pittsburg R. R. Co., 74 Pa. 94; Com. v. Erie Ry. Co., 2 Pearson, 380.

*John P. Elkin,* deputy attorney general, with him *Henry C. McCormick,* attorney general, for appellee.—The officers of the defendant corporation did not make such an effort to ascertain the residence of the bondholders as would exempt the corporation from the payment of the tax sought to be recovered by the commonwealth in the proceeding now pending before the court.

It is the duty of the officers of the defendant corporation to deduct the tax and pay the same into the state treasury. When an exemption is claimed by reason of the fact that certain bonds are held by nonresident bondholders, the burden of proof is upon the company to show that fact. The commonwealth invokes the presumption that all bonds issued by a Pennsylvania corporation are held by residents of Pennsylvania, and that the burden of proof is upon the person claiming that they are held by nonresidents to establish that fact: Com. v. Lehigh Valley R. R., 129 Pa. 449; Com. v. Penna. Salt Mfg. Co., 145 Pa. 55; Com. v. Lehigh Valley R. R., 129 Pa. 429; State Tax on Foreign-Held Bonds, 15 Wallace, 300; Com. v. New York, Lake Erie & Western R. R., 150 Pa. 234; Com. v. City of Chester, 123 Pa. 626.

PER CURIAM, January 3, 1898:

This case was in the court below on appeal by the defendant company from the account stated against it by the auditor general and state treasurer for tax on loans and bonded indebtedness for the year ending December 31, 1895. It was there tried without a jury under the provisions of the act of 1874, and final judgment entered in favor of the commonwealth. The learned court's findings of fact, conclusions of law and opinion on defendant's exceptions—of which its judgment is predicated—are all fully set forth in the record. A careful perusal and con-

sideration of these, with special reference to the specifications of error, has led us all to the conclusion that neither of said specifications should be sustained. We find no substantial error in any of the learned trial judge's findings of fact or legal conclusions. All the questions involved in this appeal have been so fully considered and so satisfactorily disposed of by him in the opinions referred to that little, if anything, can be profitably added to what has been so well said therein. The judgment is therefore affirmed on said opinions.

Judgment affirmed.